## RECORD NO. 13-4576

### IN THE
### UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

### UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

### JOHN STUART DOWELL,

Defendant - Appellant.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### AT HARRISONBURG

_____

### BRIEF OF APPELLEE

_____

**TIMOTHY J. HEAPHY**
**United States Attorney**
**Nancy S. Healey**
**Assistant United States Attorney**
**255 West Main Street, Room 130**
**Charlottesville, Virginia 22902**
**(434)293-4283**
**Darcy Katzin,**
**Trial Attorney**
**United States Department of Justice Child**
**Exploitation & Obscenity Division**
**Counsel for Appellee**

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ...................................................................ii

STATEMENT OF JURISDICTION...................................................1

STATEMENT OF THE ISSUES .........................................................1

STATEMENT OF THE CASE AND FACTS .....................................2

STANDARD OF REVIEW ……………………………………….20, 37, 54, 59

SUMMARY OF THE ARGUMENT ..................................................18

ARGUMENT ......................................................................................20

I.    DOWELL'S SENTENCE OF 960 MONTHS WAS NOT CRUEL AND UNUSUAL UNDER THE EIGHTH AMENDMENT; DOWELL CANNOT ESTABLISH A GROSS INFERENCE OF DISPROPORTIONALITY BETWEEN THE SENTENCE IMPOSED AND THE CRIMES HE COMMITTED AND IF THIS COURT WERE TO ENGAGE IN PROPORTIONALITY ANALYSIS, DOWELL'S SENTENCE SHOULD BE AFFIRMED..…………………………… .20

II.   THE DISTRICT COURT IMPOSED A REASONABLE SENTENCE WHEN IT SENTENCED DOWELL TO A WITHIN-GUIDELINE RANGE SENTENCE OF 960 MONTHS...……………………………37

III.  THE DISTRICT COURT DID NOT ERR IN APPLYING BOTH FIVE-LEVEL ENHANCEMENTS PURSUANT TO U.S.S.G. §§2G2.2(b)(5 ) AND 4B1.5(b)(1), WHERE THE PROVISIONS HAVE DIFFERENT PURPOSES AND WHERE, IN ANY EVENT, ANY ERROR WOULD BE HARMLESS BECAUSE THERE WOULD HAVE BEEN NO EFFECT ON THE ULTIMATE SENTENCE…………………………53

i

IV.    THE DISTRICT COURT DID NOT ERR IN APPLYING THE
       VULNERABLE VICTIM ENHANCEMENT IN THIS CASE
       BECAUSE DOWELL'S YOUNGEST VICTIM WAS ESPECIALLY
       YOUNG AND CLEARLY SUSCEPTIBLE TO DOWELL'S
       GROOMING BEHAVIOR. ..…………………………………………..59


CONCLUSION ............................................................................................63

CERTIFICATE OF COMPLIANCE ....................................................................64

CERTIFICATE OF SERVICE ............................................................................65

# TABLE OF AUTHORITIES

**Page No.**

U.S. Const. amend VIII...…………………………………………………22

**CASES**

***Supreme Court***

*Ewing v. California*, 538 U.S. 11 (2003)...………………………………….23, 25, 37

*Gall v. United States*, 552 U.S. 38 (2007)...……………………….37, 38, 39, 40, 41

*Graham v. Florida*, 560 U.S. 48 ( 2010)...…………………………………...31

*Harmelin v. Michigan*, 501 U.S. 957 (1991)...………………...22, 23, 24, 25, 30, 37

*Hutto v. Davis*, 454 U.S. 370 (1982)...…………………………………24, 25

*Lockyer, v. Andrade*, 538 U.S. 63 (2003)...……………………………………...24

*New York v. Ferber*, 458 U.S. 747 (1982)...…………………………… .. 29, 46

*O'Neil v. Vermont*, 144 U.S. 323 (1892)...…………………………...…...27

*Osborne v. Ohio*, 495 U.S. 103 (1990)...…………………………………..29

*Rita v. United States*, 551 U.S. 338 (2007).............................................39

*Rummel v. Estelle*, 445 U.S. 263 (1980)...…………………………….23, 24, 25

*Smith v. Doe*, 538 U.S. 84 (2003) .......................................................43

*Solem v. Helm*, 463 U.S. 277 (1983)...………………………………..22, 23, 33

### Courts of Appeals

*United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008)………………………….39, 40

*United States v. Allen*, 491 F.3d 178 (4th Cir. 2007)……………………………..38

*United States v. Boulware*, 604 F.3d 832 (4th Cir. 2010)………………………...38

*United States v. Bynum*, 604 F.3d 161 (4th Cir. 2010)……………………………40

*United States v. Crawford*, 18 F.3d 1173 (4th Cir. 1994)………..………………..55

*United States v. Crawford*, 734 F.3d 339 (4th Cir. 2013)………………………...37

*United States v. Curry*, 523 F.3d 436 (4th Cir. 2008)……………………………39

*United States v. Diosdado-Star*, 630 F.3d 359 (4th Cir.)
    *cert. denied*, -- U.S. --, 131 S. Ct. 2946(2011)……………………………...38

*United States v. Engle*, 676 F.3d 406 (4th Cir. 2012)……………………………..50

*United States v. Etoty*, 679 F.3d 292 (4th  Cir.), *cert. denied,*
    *133 S.Ct. 327 (2012)*……………………………………………………………60

*United States v. Grubbs*, 585 F.3d 793(4th Cir. 2009)……………………………60

*United States v. Khan*, 461 F.3d 477 (4th Cir. 2006)……………………………..28

*United States v. Layton*, 564 F.3d 330 (4th Cir. 2009)…………………………...39

*United States v. Malloy*, 568 F.3d 166 (4th Cir. 2009)………………………..21, 22

*United States v. Meyers*, 280 F.3d 407 (4th Cir. 2002) .......................................20

*United States v. Ming Hong*, 242 F.3d 528 (4th Cir. 2001)……………….21, 22, 27

*United States v. Montes-Pineda*, 445 F.3d 375 (4th Cir. 2006)…………………..40

*United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007)………………………39, 40

United States v. Presley, 52 F.3d 64 (4th Cir. 1995)…………………………...22

*United States v. Rhodes*, 779 F.2d 1019 (4th Cir. 1985)…………………………26

*United States v. Savillon-Matute*, 636 F.3d 119 (4th  Cir. 2011)..………………...58

*United States v. White*, 238 F.3d 537 (4th Cir. 2001)………………………….40

*Hawkins  v. Hargett*, 200 F.3d 1279 (10th Cir. 1999)…………………………28

*United States v. Allison*, 447 F.3d 402 (5th Cir. 2006)…………………….....43

*United States v. Angelos*, 433 F.3d 738 (10th Cir. 2006)……………………....26

*United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008)………………………..49

*United States v. Bistline*, 665 F.3d 758 (6th Cir. 2012)………………………46, 47

*United States v. Bullock*, 550 F.3d 247 (2d Cir. 2008)…………………………26

United States v. *Camiscione*, 591 F.3d 823 (6th Cir. 2010)………………………47

*United States v. Crandon*, 173 F.3d 122 (3d Cir. 1999)..……………………...51, 52

*United States v. Delacruz-Soto*, 414 F.3d 1158 (10th Cir. 2005)……………….....29

*United States v. Farley*, 607 F.3d 1294 (11th Cir. 2010)…..…………………….26

*United States v. Frisby*, 258 F.3d 46 (1st Cir. 2001)..…………………………..25

*United States v. Goff*, 501 F.3d 250 (3d Cir. 2007)………………………………46

*United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007)…..…………………...46

*United States v. Graciani*, 61 F.3d 70 (1st Cir. 1995)……………………………25

*United States v. Gross*, 437 F.3d 691 (7th Cir. 2006)……………………………….34

*United States v. Huffstatler*, 561 F.3d 694 (7th Cir. 2009)………………………..48

*United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010)……………45, 46, 50, 51, 53

*United States v. Jenkins*, 712 F.3d 209 (5th  Cir. 2013)…………………..…….9, 61

*United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006)……………………35, 48

*United States v. Kapordelis*, 569 F.3d 1291 (11th Cir. 2009)……………………48

United States v. MacEwan, 445 F.3d 237 (3d Cir. 2006)…………………………33

*United States v. Moriarity*, 429 F.3d 1012 (11th Cir. 2005)……………………...28

*United States v. Paton*, 535 F.3d 829 (8th Cir. 2008)………………………...33, 49

*United States v. Polk*, 546 F.3d 74 (1st Cir. 2008)………………………..25, 33, 36

*United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008)……………………....43, 49

*United States v. Raplinger*, 555 F.3d 687 (8th Cir. 2009)………………………..48

*United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009)……………………..29, 48

*United States v. Schell*, 692 F.2d 672 (10th Cir. 1982)…………………………..28

*United States v. Thomas*, 627 F.3d 146 (5th Cir. 2010)…………………………..26

*United States v. Trejo-Martinez*, 481 F.3d 409 (6th Cir. 2007)………………… 42

*United States v. Vowell*, 516 F.3d 503 (6th Cir. 2008)……………………………49

*United States v. Walker*, 473 F.3d 71 (3d Cir. 2007)……………………………..26

*United States v. Weis*, 487 F.3d 1148 (8th Cir. 2007)…………………………….34

*United States v. Wiest*, 596 F.3d 906 (8th Cir. 2010)……………………………..26

*United States v. Wright*, 373 F.3d 935 (9th Cir. 2004)...………………………9, 61

**Unpublished Cases**

*United States v. Crawford*, 175 Fed.Appx. 594 (4th Cir. 2006)…………………..21

*United States v. Ebersbach*, 489 Fed.Appx. 635 (4th Cir. 2012)…………………50

*United States v. Hallman*, No. 13-4086, 2013 WL 6511516
    (4th Cir. Dec. 13, 2013)…...…………………………………………………..49

*United States v. Hinnant*, 384 Fed.Appx. 276 (4th Cir. 2010)…………………....21

*United States v. Martinez*, 453 Fed.Appx. 342 (4th Cir. 2011)
    *cert. denied* 132 S. Ct. 1130 (2012)………………………………………….50

*United States v. Mattocks*, 408 Fed.Appx. 717 (4th Cir. 2011)...………………..50

*United States v. McKenzie*, 96 Fed.Appx. 164 (4th Cir. 2004)…………………..21

*United States v. Miller*, 534 Fed.Appx. 204 (4th Cir. 2013)……..………………50

*United States v. Monge*, 332 Fed.Appx. 901 (4th Cir. 2009)……………………..21

*United States v. Schellenberger*, 246 F.Appx. 840 (4th Cir. 2007)......11, 49, 55, 56

*United States v. Steffen*, No. 12-4484, 2013 WL 6698604
    (4th Cir. Dec. 20, 2013)………...…………………………….54, 59, 60

*United States v. Washington*, 366 Fed.Appx. 463 (4th Cir. 2010)………………..21

*United States v. Wright*, 254 Fed.Appx. 974 (4th Cir. 2007)……………………..21

*United States v. Blage,* 426 Fed.Appx. 829 (11th Cir. 2011)……………………34

*United States v. Carter*, 292 Fed.Appx. 16, 20 (11th Cir. 2008)

*United States v. Davis*, 306 Fed.Appx. 102 (5th Cir. 2009)………………….....34

*United States v. Dobrowolksi*, 406 Fed.Appx. 11 (6th Cir. 2010)………………...26

*United States v. Falgout*, 325 Fed.Appx. 775 (11th Cir. 2009)………………33, 37

*United States v. Green*, 259  Fed.Appx. 171 (11th Cir. 2007)…...………………34

*United States v. Herrick*, 512 Fed.Appx. 534  (6th Cir. 2013)………………...34, 37

*United States v. Higgins*, 504 Fed.Appx. 786 (11th Cir. 2009)…………….....…34

*United States v. Jones*, 480 Fed.Appx. 969 (11th Cir. 2012)……………………..27

*United States v. Merchant*, 506 Fed.Appx. 959 (11th Cir. 2013)…………………34

*United States v. Puglisi*, 458 Fed.Appx. 31 (2d Cir. 2012)………………………33

*United States v. Soule*, 250 Fed.Appx. 834 (10th Cir. 2007)…………………27, 34

*United States v. Williams*, No. 13-133532013 WL 6851125,
    (11th  Cir.  Dec, 31, 2013)...…………………………………………………..48

*United States v. Fred*,  No. CR-050801, JB., 2008 WL 2229527
    (D.N.M. Feb. 8,  2008)…..……………………………………………………56

*United States v. Wilson*,  No. 1:07CR-219, 1:07-CR-297, 2007 WL 3070361, *2
(E.D.Va. Oct. 19,  2007)……….……………………………………………………56

**District Court Cases**

*United States v. Bastian*, 650 F. Supp. 2d 849 (N.D. Iowa 2009)…….…………..56

*United States v. Bruffy,* No. 6:11-CR-00006, 2012 WL 1003503
    (W.D.V.A. Mar. 26, 2012)…………………………………………………….50

*United States v. Walls*, 70 F.3d 1323 (D.C. Cir. 1995)…..………………………..27

**Statutes**

18 U.S.C. § 116………………………………………………………………...35

18 U.S.C. § 924(c)……………………………………………………………….28

18 U.S.C. § 924(c) (1)…………………………………………………………….28

18 U.S.C. § 924(c)(1)(C)………………………………………………………….27

18 U.S.C. § 2251(a)……....……………………………………………………….48

18 U.S.C. § 2251(e)………….…………………………………………………...48

18 U.S.C. § 2252A(a)(2)(A)..……………………………………………………..48

18 U.S.C. § 2252A(b)(1)...………………………………………………………..48

18 U.S.C. § 2252(a)(2)...………………………………………………………….34

18 U.S.C. §2426(b)(1)(A) or (B)………………………………………………….55

18 U.S.C. § 2441……………………………………………………………….36

18 U.S.C. § 3231……………………………………………………………....1

18 U.S.C. § 3553(a)………………………………………………………….*passim*

18 U.S.C. § 3553(a)(2)…………………………………………………....53

18 U.S.C. § 3553 (a)(2)(A)…………………………………………………52

18 U.S.C. § 3742………………………………………………………………...1

28 U.S.C. §1291……………………………………………………………………1


### United States Sentencing Guidelines

U.S.S.G. § 2G2.1(a)…………………………………………………………4

U.S.S.G. § 2G2.1(a)(2)……………………………………………………..5

U.S.S.G. § 2G2.1(b)(1)(A)………………………………………………4

U.S.S.G. § 2G2.1(b)(2)(A)………………………………………………4

U.S.S.G. § 2G2.1(b)(5)……………………………………………………4

U.S.S.G. § 2G.2………………………………………………………………58

U.S.S.G. § 2G.2(a)(2)………………………………………………………5

U.S.S.G. § 2G2.2(b)(2)……………………………………………………5

U.S.S.G. § 2G2.2(b)(2)(A)……………………………………………..11

U.S.S.G. § 2G2.2(b)(3)(F)………………………………………………5

U.S.S.G. § 2G2.2(b)(4)……………………………………………………5

U.S.S.G. § 2G2.2(b)(5)……………………………………………………*passim*

U.S.S.G. § 2G2.2(b)(6)……………………………………………………5

U.S.S.G. § 2G2.2(b)(7)(D)……………………………………………5

U.S.S.G. § 3A1.1…..…………………………………………….2, 61

U.S.S.G. § 3A1.1(b)(1)..……………………………4, 5, 19, 59, 60

U.S.S.G. § 3D1.4……………………………………………...6

U.S.S.G. § 3E1.1………..…………………………………..6

U.S.S.G. § 4B1.5..………………………………...6, 12, 56, 58

U.S.S.G. § 4B1.5(b)………………………………………11

U.S.S.G. § 4B1.5(b)(1).…………………………………*passim*

U.S.S.G. § 4B2.G..…………………………………………1

U.S.S.G. §4G1.2(d)…………………………………………12

U.S.S.G. § 5G1.2(b)...…………………………………6, 40

U.S.S.G. § 5G1.2(d)…………………………………..6, 27, 40

U.S.S.G. Ch. 5, Pt. A…………………………………………6

U.S.S.G. Ch. 5, Pt. A cmt. n.2..…………………………6, 39, 55

**Miscellaneous**

Section 645(a) of  Div. C. Pub.L. 104-208…………………………….…..35

# STATEMENT OF JURISDICTION

This is an appeal of a criminal case from the United States District Court for the Western District of Virginia in Harrisonburg. The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. The order of judgment was entered on July 25, 2013. The notice of appeal was filed on August 1, 2013. This Court has jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUE(S)

I.    WHETHER DOWELL'S WITHIN-GUIDELINES SENTENCE OF 960 MONTHS FOR MULTIPLE OFFENSES INCLUDING PRODUCTION OF CHILD PORNOGRAPHY THAT INVOLVED TWO VERY YOUNG CHILDREN, INCLUDING A THREE-YEAR-OLD GIRL WHO DOWELL METHODICALLY GROOMED AND REPEATEDLY MOLESTED, CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT.

II.   WHETHER DOWELL'S PRESUMPTIVELY REASONABLE, WITHIN-GUIDELINES SENTENCE OF 960 MONTHS IS REASONABLE, WHEN THE COURT PROPERLY CONSIDERED AND EXTENSIVELY DISCUSSED THE FACTORS UNDER 18 U.S.C. § 3553(A).

III.  WHETHER THE DISTRICT COURT ERRED IN APPLYING FIVE-POINT ENHANCEMENTS FOR BOTH PATTERN OF ABUSE UNDER U.S.S.G. §2G2.2(b)(5) AND FOR BEING A REPEAT AND DANGEROUS SEXUAL OFFENDER UNDER U.S.S.G. §4B2.G AND THEREBY IMPERMISSIBLY DOUBLE COUNTED SIMILAR CONDUCT WHERE THE ENHANCEMENTS ADDRESS DIFFERENT HARMS AND WERE INTENDED TO BE APPLIED TOGETHER.

IV.    WHETHER THE DISTRICT COURT ERRED IN APPLYING THE VULNERABLE VICTIM ENHANCEMENT UNDER U.S.S.G. §3A1.1 FOR DOWELL'S THREE-YEAR-OLD VICTIM WHOSE COGNITIVE DEVELOPMENT WAS SUBSTANTIALLY LESS THAN OLDER MINORS AND PREVENTED HER FROM UNDERSTANDING THE NATURE OF DOWELL'S ACTIONS.

## STATEMENT OF THE CASE AND FACTS[1]

John Stuart Dowell engaged in multiple escalating acts of molestation with a three-year-old girl and filmed those acts while staying at a Frederick County, Virginia, residence in late 2010 and early 2011.  He also made two videos of a five year old girl that focused on this other child's genital area.  J.A. 45.

The investigation began when the Bureau of Immigration and Customs Enforcement (ICE) learned that Danish law enforcement had downloaded from the Internet some of the videos produced by Dowell depicting his abuse and exploitation of the three-year-old.  J.A. 45-46.  ICE obtained a "John Doe" warrant and sought to identify the adult male (Dowell) in the videos.  J.A. 46.  Around the same time, a relative of Dowell's turned over a copy of some of the sexually explicit videos of Dowell and the three year old to the Federal Bureau of Investigation (FBI) in Florida and identified Dowell, the young child, and the residence depicted in the videos.  J.A. 46.  This information ultimately led to

---

[1] Citations to the Joint Appendix are referenced with "J.A. at _____."

Dowell's arrest in California and the recovery of incriminating computer evidence and a camera.  J.A. 4, 12-17. 46-47.

On December 1, 2011, Dowell had his initial appearance in the Western District of Virginia (WDVA).  J.A. 4.

On December 8, 2011, Dowell had a preliminary hearing.  J.A. 4.

On December 14, 2011, a federal grand jury sitting in Charlottesville, Virginia, returned an indictment charging Dowell with a single count of employing, using, persuading, inducing, enticing, or coercing a minor girl, who was then approximately three years old, to engage in sexually explicit conduct, for the purpose of producing visual depictions of that conduct (hereafter production of child pornography).

On April 25, 2012, after the forensic examination had been completed, a superseding indictment was returned, charging Dowell with ten counts of production of child pornography relating to his sexual exploitation of the three-year-old victim (Minor A); two counts of production of child pornography involving a five-year-old girl (Minor B); and one count of transportation of child pornography. J.A. 5, 18-21.

On October 3, 2012, Dowell pled guilty to all charges in the superseding indictment, without a plea agreement, before the Honorable United States District Judge Michael F. Urbanski.  J.A. 23-56.

The United States Probation Office prepared a revised Presentence Report (PSR), dated June 13, 2013, which calculated the offense levels as follows:

- Counts One through Three, Five through Seven, and Ten - Level 40:

  Base offense level 32 pursuant to U.S.S.G. §2G2.1(a); four-level increase pursuant to §2G2.1(b)(1)(A) because the victim was less than  twelve years old; two-level increase pursuant to §2G2.1(b)(5) because the child was in the care of Dowell; and a two-level vulnerable victim increase pursuant to §3A1.1(b)(1) due to the very tender age of the youngest contact victim (Minor A).  J.A. 340-41, 342-44, 345-46.

- Counts, Four, Eight, and Nine - Level 42:

  Same calculations as for Counts One through Three, Five through Seven, and Ten, but also adding  two levels pursuant to §2G2.1(b)(2)(A), because these offenses involved the commission of a sexual act or sexual contact.  J.A. 341-42, 344-45.

4

- Counts Eleven and Twelve - Level 38:

  Same calculations as for Counts One through Three, Five through Seven, and Ten but without the two-level vulnerable victim enhancement. J.A. 346-47.

- Count Thirteen - Level 44:

  Base offense level of 22 pursuant to §2G2.2(a)(2); two level increase pursuant to §2G2.2(b)(2) because the offense involved a minor who was younger than twelve; two-level increase pursuant to §2G2.2(b)(3)(F) for distribution; four-level increase pursuant to §2G2.2(b)(4) because the offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence; five-level increase pursuant to §2G2.2(b)(5) because Dowell engaged in a pattern of activity involving the sexual abuse or exploitation of a minor; two-level increase pursuant to §2G2.2(b)(6) because the offense involved the use of a computer; five-level increase pursuant to §2G2.2(b)(7)(D) because the offense involved 600 or more images; and a two-level increase pursuant to §3A1.1(b)(1) for Minor A. J.A. 347-48.

Level 44 was the greatest of the adjusted offense levels according to the PSR. J.A. 348. A five-level increase was added under the grouping rules (production charges

do not group) under §3D1.4.  J.A. 349.  Dowell's offense level was then decreased

pursuant to §3E1.1 for acceptance of responsibility but then increased five levels

pursuant to §4B1.5(b)(1) because Dowell qualified as a repeat and dangerous sex

offender against minors.  J.A. 349.  Consequently, Dowell's total offense level was

43,[2] J.A. 349, and his advisory guidelines "range" was simply life.  U.S.S.G. Ch.

5, Part A; J.A. 352.  Because the statutory maximum sentence for each count was

less than life, the Probation Officer aggregated all of the statutory maximum

sentences, pursuant to U.S.S.G. §§5G1.2(b) and (d), for a final guideline range of

4,560 months.  J.A. 352.

Dowell objected to the two-level increase for distribution and objected to

application of both five level pattern-of-activity enhancements under §2G2.2(b)(5)

and §4B1.5.  J.A. 360-61.  The Probation Officer disagreed with these objections.

J.A. 361.

Dowell appeared for sentencing on July 18, 2013.  At the conclusion of the

hearing, during which the district court 1) heard testimony from multiple witnesses

for each party, including Dowell, and 2) viewed some of the horrific child

---

[2] Dowell's actual total offense level, as calculated by the Probation Officer, was 51, but because 43 is the maximum potential offense level under the Guidelines, it was reduced to 43 pursuant to U.S.S.G. Ch. 5, Pt. A, cmt. n.2.  The district court ultimately removed the distribution enhancement from Count Thirteen, finding it was not supported by a preponderance of the evidence.  J.A. 174.  Thus, the final calculation was level 49, which, by necessity, was reduced to 43 as well.

pornography, the district court sentenced Dowell to a total term of 960 months of imprisonment and lifetime supervision.  J.A. 23-323.

Examination of the recovered digital evidence had revealed multiple videos Dowell had produced, depicting Minor A engaged in sexually explicit conduct, including footage of Dowell licking and kissing the little girl's genital area, buttocks, and anus.  Minor A referred to some of Dowell's acts as "drinking" her body parts.  J.A. 47, 87-88.  During one video, Dowell displays and strokes his penis, and suggests that the victim can touch his penis and "drink" it too.  J.A. 47. It is clear that Dowell methodically aimed to capture images of the girl's vaginal and anal area and of his sexual abuse of the child, in essence, directing the scenes. *See* J.A. 49-52.  Metadata established that the different counts in the superseding indictment were based on separate acts.  J.A. 47.  The forensic analysis also revealed Dowell's production of two child pornography videos depicting Minor B and focusing on her genital area, one of them showing Dowell pulling down her underpants.  J.A. 47-48.

Testimony during the sentencing hearing by James Fottrell, director of the Department of Justice's High Technology Investigative Unit, in the Child Exploitation and Obscenity Section, established that Dowell had child pornography and erotica on three seized devices.  J.A. 72.  Fottrell found 70,000 images and

videos, or about 75% of Dowell's total images, qualified as child pornography or child erotica; approximately 10% consisted of anime depicting minors engaging in sexually explicit conduct, 10% was adult pornography, and 5% consisted of fetish videos, including scat (one featured Dowell) and bondage. *See* J.A. 73-75.

Dowell used sophisticated programs to search for his collection, including programs with features that allow a user to engage in his online actions anonymously, including Freenet and TOR (The Onion Router). *See* J.A. 75-85. Fottrell described Dowell as "a very sophisticated offender who is using multiple technologies." J.A. 83. Dowell claimed that someone hacked his computer and denied personally uploading the movies of his exploitation of Minor A. *See* J.A. 122-23.[3] The compilation video found on the Internet and turned over to ICE was not found on Dowell's computers but the components were. J.A. 88-89; *see also* J.A. 134. However, Dowell did have video-editing software (and had in fact used such software) capable of making the compilation video. J.A. 97-99.

Regarding Dowell's non-self-produced collection, Fottrell testified about finding images depicting adult males sexually abusing infant and toddler girls and other types of child pornography and erotica. A sample was introduced as Government Exhibit 2. *See* J.A. 101-03. The district court also reviewed a CD containing a seven-minute compilation of excerpts of the videos Dowell produced

---

[3] *See also* J.A. 138-42 (testimony of defense forensic examiner).

with the three- and five-year old girls that was introduced as Government Exhibit

3.  J.A. 104-11.

In advocating for the vulnerable victim enhancement, the United States

relied in large part on *United States v. Jenkins*, 712 F.3d 209 (5th Cir. 2013) and

*United States v. Wright*, 373 F.3d 935 (9th Cir. 2004), because those cases had

affirmed the application of this enhancement for child pornography depicting very

young children, e.g., infants and toddlers.  *See* J.A. 149-54.  The United States

pointed out that the *Jenkins* case was a child pornography trafficking case and not

a production case and noted that Dowell's non-self-produced collection included

depictions of babies engaging in sexually explicit conduct, prompting the district

court to review the previously introduced sample of images.  J.A. 151.  When the

United States highlighted the unusual vulnerability of Dowell's youngest victim, as

compared to an older prepubescent minor, the district court stated the following:

> And we have seen the videos.  And we have seen the exploitation of
> the three-year-old that is different by material degree to the
> exploitation of the five-year-old.  They are both exploited … [W]hy is
> it that the three-year –old was subjected to this?  And that's because
> the three-year-old didn't have the cognitive ability or the
> psychological development - - I mean, that child tried to say no …
> That child did say no.  That child kept pulling her pants back up in
> these videos.  But that child didn't have the age and maturity to be
> able to stop this, didn't understand what was going on, perhaps, even
> that the five-year-old had … there's a difference there in the conduct.
> And that goes right to the heart of this vulnerable victim enhancement

… it is sort of right smacking me in the face in this case because we
have different levels of conduct involving children of different ages.

J.A. 152-53.

The district court applied the vulnerable victim enhancement, highlighting

*Jenkins'* and *Wright's* reliance on characteristics attendant to extreme youth.  J.A.

169-73.  In doing so, the district court noted the following:

[I]t is clear to me of how vulnerable [Minor A] is … and how her
cognitive abilities just do not allow her to appreciate what is going on
with her, what is being done to her, and the progression of this vile
abuse that was inflicted on her.

From my own viewing of the videos and looking at what happened
over the progression, seeing that she plainly doesn't understand what
is going on here, focusing on her cognitive development, I believe this
victim is particularly vulnerable.

J.A. 172.  The district court further noted 1) the "clear" psychological effect based

on the progression of the abuse on Minor A, explaining that the girl thought she

was playing with him due to her cognitive state, giggling and asking him to stop

and trying to put her pants back on and 2) the progression to the young girl

requesting Dowell's sexual acts, "demonstrating the particular vulnerability

psychologically in this child."  J.A. 172-73.

The district court further found a "stark difference" between the abuse

Dowell inflicted on Minor A and Minor B.  J.A. 173.  The district court clearly

found the content of the videos to be persuasive on this enhancement ("…given the

10

vulnerable victim enhancement, I think the Court had to see [the videos]").  J.A. 284.

Regarding the objection to the application of both five-level pattern of abuse enhancements, the United States cited, *inter alia, United States v. Schellenberger*, 246 F.Appx. 830 (4th Cir. 2007)(unpublished) in support of the simultaneous application of U.S.S.G. §§2G2.2(b)(5) and 4B1.5(b)(1).  J.A. 155-58.  The district court noted that the double-counting issue only applied to Count Thirteen, and further noted that "[t]he practical implication" was that it didn't "really matter at the end of the day."  J.A. 155-56.  Dowell admitted that he had not found any contrary law.  J.A. 163.  The district court thereafter emphasized the different purposes of the different sections and cited *Schellenberger.*  J.A. 163, 176.

In overruling Dowell's objection, the district court noted that double counting is generally authorized unless the guidelines expressly prohibit it and found specifically that there was no prohibition on applying both of the contested provisions, again referring to *Schellenberger* and noting that §4B1.5(b)(1) directed the five-level enhancement was to be added to offense levels determined under Chapters Two and Three of the Guidelines.  *See* J.A. 175-76.  Finally, the district court found that a "plethora of precedents" supported the application of both enhancements.  J.A. 177.

11

Thereafter, the district court found that the adjusted offense levels were 40 for Counts One, Two, Three, Five, Six, Seven, and Ten; 42 for Counts Four, Eight, Nine, and Thirteen; and 38 for Counts Eleven and Twelve. J.A. 180-81. Due to the multiple groupings, the district court added five levels to the highest group, resulting in a level 47; subtracted three levels for acceptance of responsibility; and then added five levels pursuant to U.S.S.G. §4B1.5 for a total offense level of 49, but then reducing to a final, and highest authorized, level of 43. J.A. 182-83.

While the Probation Officer's and United States' positions were that the district court needed to aggregate all of the maximum sentences for each count (4,560 months) pursuant to U.S.S.G. §4G1.2(d) because the aggregated sentences did not result in a "life" sentence, the district court stated that the language "only to the extent necessary to produce a combined sentence equal to the total punishment" allowed it to sentence to a lesser amount that would be tantamount to a life sentence for a defendant like Dowell. *See* J.A. 183-95, 305-09. The district court found that the guideline range should be 960 months. J.A. 193.

In furtherance of its request for a guidelines sentence, the United States presented testimony from Dr. Donna Moore, Ph.D., an indisputable expert in psychosexual and sex offender evaluations and treatment (and who previously worked in the federal Sex Offender Treatment Program). She had interviewed,

12

tested, and evaluated Dowell.  J.A. 198-243.  Dr. Moore offered a diagnosis of

pedophilia, based in large part on Dowell's "statements about his attraction and the

materials he was viewing" and had produced.  J.A. 210-11.  She explained that

"pedophilia is not opportunistic," J.A. 212, and characterized Dowell's suggestion

that he didn't do anything to Minor A that she didn't want him to do as a

"cognitive distortion" and a shifting of responsibility.  J.A. 212-16.

      Dr. Moore found that Dowell's behavior was fairly consistent with that of

other men she had diagnosed as pedophiles and further found that Dowell

presented a risk to reoffend.  *See* J.A.  218.  She explained that pedophilia "is a

lifelong persistent condition."  J.A. 222-23.  She further talked about recidivism

studies and noted that it was not uncommon for offenders to have significant

periods of time between offenses.  *See* J.A. 223-28.  She was "very confident" in

her diagnosis of pedophilia for Dowell.  J.A. 228.  She did not believe that

Dowell's participation in "Sex and Love Addicts Anonymous" was acceptable

treatment and explained that that type of treatment undermined other treatment

because the message would be that a participant was an addict and could not help

his actions.  J.A. 229.

      On cross examination, Dr. Moore acknowledged that pedophilia can be

managed but also stated it could not be cured.  J.A. 234-35.  Indeed, when asked

whether treatment while imprisoned might lower Dowell's future risk, Dr. Moore testified that this would not lower the risk but that, rather, "it provides external barriers while somebody is learning to manage their risk." *See* J.A. 238-39.

The contact victims' father allocuted thereafter and spoke, in part, about the "unbearable" aftermath of the offenses. J.A. 244-45. The United States then read excerpts of victim impact statements associated with some of the images in Dowell's significant collection; those excerpts highlighted the enduring harm not only from the primary abuse but also from the secondary trauma, stress, and knowledge that child pornography images that are posted on the Internet are there forever and the concern that the victims may be recognized and hurt again in other ways. *See* J.A. 247-56. The United States also informed the district court that the videos of Minor A had already been found in numerous collections. J.A. 256.

Dowell's brother testified about Dowell's upbringing, history of depression and loneliness, and stated that Dowell had helped care for a nephew with cancer at some point. J.A. 257-62,

Dowell was the final witness to testify. J.A. 263-82. He testified that he began looking at "naturist pictures" around 1998 or 1999 but acknowledged having bought a magazine with "underage females" when he was eighteen-years-old. J.A. 266. When he began looking for Internet material depicting minors, he claimed he

14

first looked at "naturist videos," which he then thought of "as being fairly innocent." J.A. 267. He progressed to harder core material which he characterized as "addictive" (and later acknowledged finding highly arousing), talked about suffering from depression, and testified about becoming involved in support/counseling groups and helping others. *See* J.A. 267-73, 281. He thereafter asserted that he would "do anything possible not to offend in any way or be involved in child pornography in any way again." J.A. 274. On cross-examination, he admitted serially molesting Minor A and trying to get her to engage in acts that he now realized she didn't want to do. J.A. 275-76. He also admitted that he tried to get this little girl to do to him the same things he did to her. J.A. 277. He further indicated he now realized the girl "was vulnerable and not cognitively able to even know what was happening to her." J.A. 278. Regarding his other extensive child pornography activity, he acknowledged using software that allowed for some measure of anonymity because he did not want to get caught. J.A. 279.

In arguing for a guidelines sentence, the United States noted, in part, that Dowell was "unquestionably a pedophile;" a very sophisticated computer user; that he posed a recidivism risk; that he methodically groomed Minor A and violated the trust of the two contact victims and their parents; that the alleged therapy was

unsuccessful; that Dowell's risky behavior resulted in the videos being on the Internet "forever;" and that he had committed his crimes for many years. J.A. 284-92, 299.

In arguing for a lesser sentence, Dowell asked the district court to consider whether he was "savable at some level," noting that he sought treatment in the past and had some redeemable qualities, and that therefore, a life sentence was greater than necessary. J.A. 302-03. He also characterized his crimes as "situational" and as "crime[s] of opportunity" rather than predatory. J.A. 303-304, Dowell then apologized and claimed he loved the youngest victim. J.A. 304-305.

In sentencing Dowell to 960 months, the district court explained how the Section 3553(a) factors demanded such a sentence and stated that the sentence was not greater than necessary and was needed to protect the public. J.A. 309-15. The district court further noted that "the difference between this case and many of the child pornography cases we see is the contact, the contact, the contact, the touching, the touching, and more, the touching." J.A. 309.

The district court thereafter noted that it had read the sentencing memoranda and listened to everything presented that day. J.A. 310. Regarding the nature and circumstances of the offense, the district court found that Dowell had not committed a crime of opportunity but rather, regarding the abuse of the three-year-

old, a predatory, premeditated, calculated, cold, and heinous crime "designed to get that child to a point where she, in her young, young, young, and undeveloped cognitive state, became interested in this behavior." J.A. 311. The district court further noted that the conduct was extremely, extremely serious," noting that the videos of the youngest child had been disseminated to others. J.A. 312. Regarding offender characteristics, the district court noted that Dowell had been involved with child pornography for several years and that his pedophilia would not diminish with age. J.A. 312. The district court thereafter found that the seriousness of the offense, the need for just punishment, the need to afford adequate deterrence (specific and general), and the need to protect the public from further crimes of Dowell, each required a life term. J.A. 312-13. Such a sentence, did not result in any unwarranted sentencing disparity. J.A. 313. Moreover, "a life sentence in this case is required to do justice."

> Let me be clear. Let me be clear. This conduct, harming these children, touching these children, molesting these children, requires a life sentence. He did it on multiple days. He did it over multiple months. He did it in a predatory manner. He did it to produce these videos. Justice requires a life sentence.
>
> In real and practical terms this sentence of 80 years, or 960 months, is the maximum aggregate sentence the law allows me to impose. It is not greater than necessary. This sentence is necessary to protect the public and to make sure this defendant never has the opportunity to do this again.

J.A. 315.

In order to achieve the total 960-month sentence, the district court imposed 360-month sentences on all offenses against Minor A and 180-month sentences against Minor B and ran some of these sentences consecutively. The district court imposed a consecutive 60-month term on the transportation charge. J.A. 313-15. The Court also imposed lifetime supervision and $1300 in special assessments. J.A. 316-17.

On July 25, 2013, the district court entered the judgment. J.A. 324-31.

On August 1, 2013, Dowell filed a timely notice of appeal. J.A. 332.

## SUMMARY OF THE ARGUMENTS

I.     Dowell's sentence of 960 months was not cruel and unusual in violation of the Eighth Amendment. Dowell cannot establish that his sentence creates an inference of gross disproportionality when it is compared with the seriousness of the multiple crimes for which he was convicted, including the repeated grooming, molestation, and exploitation of a vulnerable, three-year-old girl in order to produce depictions of that abuse, as well as the filming of a five-year-old girl. Under any theory, Dowell's sentence was not disproportionate, and should be affirmed.

II.     The district court imposed a substantively reasonable sentence of 960 months, which was not in excess of the properly calculated guideline range, and is

therefore presumptively reasonable on appeal.  The district court thoroughly

considered the § 3553(a) factors, thoughtfully considered Dowell's arguments at

sentencing, and in light of Dowell's calculated, premeditated, and predatory

conduct, properly determined the offenses constituted very serious crimes worthy

of a life sentence.  The sentence should be affirmed by this Court.

III.    The district court did not err in applying a five-point enhancement for

pattern of activity involving the sexual abuse or exploitation of a minor pursuant to

U.S.S.G. §2G2.2(b)(5) and a second five-point enhancement for engaging in a

pattern of activity involving prohibited sexual conduct enhancement pursuant to

the U.S.S.G. §4B1.5(b)(1).  These provisions address different harms and the

application of both does not constitute impermissible double counting.  Finally,

assuming *arguendo* that there was error, any such error would be harmless as it

would not have affected the ultimate sentence.

IV.    The district court did not err in applying a vulnerable victim

enhancement pursuant to U.S.S.G. §3A1.1(b)(1) for Dowell's exploitation of

Minor A, despite the fact that age was considered in the calculation of the

substantive offense guidelines.  Due to Minor A's cognitive and developmental

youth, she was particularly vulnerable in a way that most older prepubescent

children are not.

## ARGUMENT

**I.    DOWELL'S SENTENCE OF 960 MONTHS WAS NOT CRUEL AND UNUSUAL UNDER THE EIGHTH AMENDMENT; DOWELL CANNOT ESTABLISH A GROSS INFERENCE OF DISPROPORTIONALITY BETWEEN THE SENTENCE IMPOSED AND THE CRIMES HE COMMITTED AND IF THIS COURT WERE TO ENGAGE IN PROPORTIONALITY ANALYSIS, DOWELL'S SENTENCE SHOULD BE AFFIRMED.**

A. Standard of Review

This Court reviews the question of whether a sentence is proportional under the Eighth Amendment under the de novo standard. *United States v. Meyers*, 280 F.3d 407, 416 (4th Cir. 2002).

B.  Argument

Dowell argues that his sentence of 960 months was cruel and unusual under the Eighth Amendment of the Constitution. Br. of Appellant at 8-14. But despite his arguments, Dowell cannot establish that an inference of gross disproportionality is apparent from a comparison of the sentence imposed to the horrendous crimes he committed, and has not shown that his sentence was cruel and unusual.  Moreover, if this Court engaged in proportionality review, Dowell's Eighth Amendment argument is simply unavailing and his sentence should be affirmed.

This Court has held that "proportionality review [under the Eighth Amendment's Cruel and Unusual Punishment Clause] is not available for any sentence less than life imprisonment without the possibility of parole." *United States v. Malloy,* 568 F.3d 166, 180 (4th Cir. 2009) (quoting *United States v. Ming Hong,* 242 F.3d 528, 532 (4th Cir. 2001)).  However, notwithstanding the broad language regarding the unavailability of proportionality review from *Malloy* and *Ming Hong*, this Court has not categorically refused to review Eighth Amendment challenges to term of years sentences. *Cf. Malloy*, 568 F.3d at 180.  For example, both before and after *Malloy*, the Fourth Circuit has repeatedly rejected Eighth Amendment challenges to some sentences on the merits, without holding that Eighth Amendment challenges to sentences for terms of years are categorically foreclosed. *See United States v. Hinnant*, 384 Fed.Appx. 276, 278-279 (4th Cir.), *cert. denied*, 131 S. Ct. 349 (2010)(unpublished); *United States v. Monge*, 332 Fed.Appx. 901 (4th Cir. 2009)(unpublished); *United States v. Washington*, 366 Fed.Appx. 463, (4th Cir. 2010)(unpublished); *United States v. Wright*, 254 Fed.Appx. 974, 976 (4th Cir. 2007), *cert. denied*, 552 U.S. 1301 (2008) (unpublished); *United States v. Crawford*, 175 Fed.Appx. 594, 596 (4th Cir.), *cert. denied*, 549 U.S. 890 (2006) (unpublished); *United States v. McKenzie*, 96 Fed.Appx. 164, 166 (4th Cir.), *cert. denied*, 543 U.S. 915 (2004)(unpublished);

21

*United States* v. *Presley*, 52 F.3d 64, 68 (4th Cir. 1995). Indeed, in *Malloy* itself,

though the Court determined, in reliance upon *Ming Hong,* that proportionality

review was not available because the defendant was sentenced to a term of less

than life without parole, it went on to state:

> Even if proportionality review were available, however, it likely would not change the result here. The Supreme Court has explained that "[s]evere, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." *Harmelin v. Michigan*, 501 U.S. 957, 994-95 (1991). The imposition of Malloy's 15-year sentence was for the very serious offense of sexual exploitation of a minor, and it is a result mandated by Congress. Our sister circuits to have considered the issue have also rejected the Eighth Amendment challenge to 2251.

568 F.3d 166, 180 n.14 (4th Cir. 2009)(citations omitted).

    A. *Dowell's sentence does not give rise to an inference of gross disproportionality*.

The Eighth Amendment states that "[e]xcessive bail shall not be required,

nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S.

Const. amend. VIII. The Supreme Court has interpreted the Eighth Amendment to

prohibit punishment that is "grossly disproportionate" to the offense of

conviction. *Solem v. Helm*, 463 U.S. 277, 288 (1983). The Supreme Court has

also held that a court must only conduct proportionality review "in the rare case in

which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Ewing v. California* 538 U.S. 11, 30 (2003)(quoting *Harmelin v. Michigan*, 501 U.S. 957,1005)(1991)(Kennedy, J., concurring)). The "narrow proportionality" principle applies to both capital and non-capital sentences, *Harmelin*, 501 U.S. at 996-97(Kennedy, J., concurring) (citations and internal quotations omitted), but "outside the context of capital punishment, successful challenges to the proportionality of particular sentences are exceedingly rare." *Harmelin*, 501 U.S.at 1001)(Kennedy, J., concurring). In *Rummel v. Estelle*, 445 U.S. 263, 274 n. 11 (1980), the Court stated that the proportionality principle "would . . .come into play in the extreme example . . .if a legislature made overtime parking a felony punishable by life imprisonment." In "the rare case" where there is a threshold finding of an inference of gross disproportionality, then a court must perform the Eighth Amendment proportionality test articulated by the Supreme Court in *Solem v. Helm*, looking at "(I) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." 463U.S. 277, 292 (1983). But if the threshold showing of gross disproportionality is not met, as

in *Harmelin*, and in Dowell's case, the analysis ends there. 501 U.S. at 1005;

*accord Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).

Dowell's crimes and his resulting sentences do not establish an inference of

gross proportionality, and this Court should find that the cumulative sentence of

960 months does not violate the Eighth Amendment.  In keeping with the above

principles, a plurality of the Court in *Harmelin* rejected the defendant's assertion

that his life term without parole was disproportionate because it was his first felony

conviction. *Harmelin,* 501 U.S. at 994. Instead, the Court observed that the

defendant had been convicted of possession of more than 650 grams of cocaine and

held that Michigan could determine that the seriousness of the offense warranted

the severe sentence. *Id.* at 990. Other relevant precedential decisions from the

Supreme Court also strongly suggest that Dowell's sentence should be sustained.

The Supreme Court observed in *Hutto v. Davis*, 454 U.S. 370 (1982) (per curiam),

that it "has never found a sentence for a term of years within the limits authorized

by statute to be, by itself, a cruel and unusual punishment." *Id*. at 372 (citation

omitted). Rather, the Supreme Court has repeatedly sustained sentences to lengthy

terms of imprisonment in the face of Eighth Amendment challenges. In *Rummel v.

Estelle*, 445 U.S. at 265-266, 285, for example, the Court upheld a life sentence

with the possibility of parole under a state recidivist statute for a defendant with

three successive convictions for fraudulent use of a credit card to obtain $80 worth of goods, passing a forged check for $28.36, and obtaining $120.75 by false pretenses. Likewise, in *Hutto* the Court upheld a 40-year sentence for the crime of distributing nine ounces of marijuana. *See* 454 U.S. at 371-375. And in *Ewing*, 538 U.S. at 28-31, the Court upheld a sentence of 25 years to life imprisonment under a state recidivist statute for the offense of felony grand theft.  Surely, the offenses in *Harmelin, Estelle, Hutto,* and *Ewing* are no more serious than Dowell's.

"The Constitution does not require legislatures to balance crimes and punishments according to any single standard, or to achieve perfect equipoise." *United States v. Polk*, 546 F.3d 74, 76 (1st Cir. 2008). An Eighth Amendment violation for a term of years sentence is thus "hen's-teeth rare." *Id.* Illustrating that point are numerous decisions in which the various circuit courts of appeal have upheld term of years sentences against Eighth Amendment challenges. *See, e.g., Polk*, 546 F.3d at 77-78 (upholding 188-month term of imprisonment for attempting to produce child pornography); *United States v. Frisby*, 258 F.3d 46, 47, 50 (1st Cir. 2001) (upholding 151-month term of imprisonment for heroin distribution by a career offender, even though his sentencing range would have been 24 to 30 months imprisonment if he were not a career offender); *United States v. Graciani*, 61 F.3d 70, 73-77 (1st Cir. 1995) (upholding 280-month term

of imprisonment for distributing 85.3 grams of crack cocaine); *United States v. Walker*, 473 F.3d 71, 82-83 (3d Cir.) (upholding application of a 55- year mandatory minimum term of imprisonment for three convictions for use of a firearm during a crime of violence), *cert. denied*, 549 U.S. 1327 (2007); *United States v. Rhodes*, 779 F.2d 1019, 1026, 1029 (4th Cir. 1985) (upholding 75- and 50-year terms of imprisonment without parole), *cert. denied*, 476 U.S. 1182 (1986); *United States v. Dobrowolski*, 406 Fed.Appx. 11, 12, 14 (6th Cir. 2010)(unpublished) (upholding mandatory minimum sentence of ten years imprisonment); *United States v. Wiest*, 596 F.3d 906, 911-913 (8th Cir.) (upholding mandatory minimum sentence of 57 years imprisonment), *cert. denied*, 131 S. Ct. 339 (2010); *United States v. Angelos*, 433 F.3d 738, 750-751 (10th Cir.) (upholding mandatory minimum sentence of 55 years imprisonment for three convictions of use of a firearm during a drug trafficking crime), *cert. denied*, 549 U.S. 1077 (2006);  United States v. *Farley*, 607 F.3d 1294, 1345 (11th Cir. 2010) (reversing a district court's ruling that a 30-year mandatory minimum sentence for crossing a state line to engage in sexual activity with a minor was unconstitutional); *United States v. Bullock*, 550 F.3d 247, 252 (2d Cir. 2008)(15-year mandatory sentence under the Armed Career Criminal Act for possession of eight rounds of ammunition not cruel and unusual); *United States v. Thomas*, 627

F.3d 146, 160 (5th Cir. 2010)(1,435-month sentence for armed bank robbery not a violation of the Eighth Amendment); *United States v. Soule*, 250 Fed.Appx. 834, 837-38 (10th Cir. 2007) (unpublished) (mandatory minimum 120 months for repeat offender possessing child pornography not cruel and unusual); *United States v. Jones*, 480 Fed.Appx. 969, 971 (11th Cir. 2012)(unpublished) (25-year consecutive sentence under 18 U.S.C. 924(c)(1)(C) not on its face in violation of the Eighth Amendment and sentence, as applied, did not violate the Eighth Amendment); *United States v. Walls*, 70 F.3d 1323, 1328 (D.C. Cir. 1995) (life for major players in drug conspiracy not cruel and unusual, but crack minimum mandatory penalties for minor players were).

At the outset, it should be noted that Dowell's sentence of 960 months is the result of "stacking" four of the thirteen counts, i.e., the imposition of consecutive sentences on four counts, in order to achieve what the district court found to be "the total punishment," consistent with the directives in the United States Sentencing Guidelines. *See* U.S.S.G. §5G1.2(d). But Eighth Amendment proportionality analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes. *See, e.g., O'Neil v. Vermont,* 144 U.S. 323, 331 (1892) ("If [the defendant] has subjected himself to a severe penalty, it is simply because he committed a great many such offenses."); *Ming*

27

*Hong*, 242 F.3d at 532, citing *Hawkins v. Hargett*, 200 F.3d 1279, 1285, n.5 (10th

Cir. 1999), *cert. denied*, 531 U.S. 830 (2000)(explaining that "[t]he Eighth

Amendment analysis focuses on the sentence imposed for each specific crime, not

on the cumulative sentence for multiple crimes"); *United States v. Schell,* 692 F.2d

672, 675 (10th Cir. 1982) (twenty-year sentence consecutive to current ninety-five

year sentence not an Eighth Amendment violation).  In that light, in *United States*

*v. Khan*, 461 F.3d 477, 495 (4th Cir. 2006), this Court rejected a defendant's

argument that the length and consecutive nature of his sentence (120 months, 300

months and life imprisonment imposed pursuant to the "countstacking" provisions

of 924(c)(1)) constituted cruel and unusual punishment in violation of the Eighth

Amendment, and held that lengthy, mandatory sentences imposed pursuant to the

"count-stacking" provision of § 924(c) do not violate the Eighth Amendment.

Similarly, though Dowell's sentences were not mandated by the statute, the

cumulative total was the result of the district court stacking the maximum statutory

penalties available on two of the counts of conviction, and the minimum statutory

penalties available on two other counts of conviction in order to reach the total

punishment. "In general, a sentence within the limits imposed by statute is neither

excessive nor cruel and unusual under the Eighth Amendment." *United States v.*

*Moriarity*, 429 F.3d 1012, 1024 (11th Cir. 2005)(internal quotation marks

omitted); *United States v.Delacruz-Soto*, 414 F.3d 1158, 1168 (10th Cir. 2005)

(same).  For this reason, Dowell's cumulative sentence of 80 years does not present

a threshold inference of disproportionality.

   *B. The Gravity of the Offense and Similar Sentences*

   "Child sex crimes are among the most egregious and despicable of societal

and criminal offenses...." *United States v. Sarras,* 575 F.3d 1191, 1220 (11th Cir.

2009). Congress, courts, and scholars all recognize and acknowledge that child

pornography crimes have at their core a demand for the sexual exploitation and

abuse of children. Regarding the gravity of the offense at issue, there can be no

question that the creation and dissemination of child pornography is a serious

crime that causes real injury to particularly vulnerable victims. And it is most

obvious that in the production of child pornography children are seriously

harmed—physically, emotionally, and mentally— and that harm is then exacerbated

by the circulation, often for years after the fact, of a graphic record of the child's

exploitation and abuse. *See New York v. Ferber,* 458 U.S. 747, 757–59 & nn.9–10

(1982) (citing congressional and scholarly reports, and court cases). The

distribution of child pornography feeds an industry that causes physiological,

emotional and mental trauma to the child victims. *See Osborne v. Ohio,* 495 U.S.

103, 109 (1990).  Possession, receipt, distribution and production of child

pornography are significant crimes because such crimes threaten grave harm to our

society and its most vulnerable citizens. *See Harmelin,* 501 U.S. at 1002.

Dowell cannot show that his sentence is grossly disproportionate to his

offense conduct. Dowell engaged in predatory, targeted sexual molestation of a

three-year-old girl over a period of months. He videotaped this molestation for his

own perverse sexual pleasure and for the purpose of continuing to abuse Minor A

girl by watching the recordings. As described in more detail above, the videos

depict the defendant touching, licking, and kissing Minor A's genital area, and

licking and kissing her buttocks and anus. The defendant is seen in one video with

his penis displayed, and, in essence, enticing her to perform similar acts on him.

Dowell engaged in classic grooming behavior to prey on this victim, gaining

access to her by gaining the trust of her parents, and using calculated strategies to

make her more comfortable over time with the abusive sexual conduct he imposed

on her. Notably, these videos have been found on the Internet as part of this, as

well as other, unrelated investigations. Dowell also produced two sexually explicit

videos of a five-year-old girl. It is difficult to fathom, much less quantify, the

harm perpetrated on the victims in this case, and as the government pointed out at

the sentencing hearing below, impossible to predict its long-term effects,

particularly on Minor A. But whatever that harm might be, and however long-

lasting the effects, Dowell's calculated, predatory sexual abuse and exploitation of these girls was unthinkable.

Contrary to Dowell's arguments, the circumstances of this case do not mitigate the severity of the criminal conduct at issue. In arguing that his sentence was constitutionally excessive, Dowell pleads that (1) his sentence deprives him of "a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," (2) Dowell's victim "was never placed in any danger . . . [and] was not physically injured in any way, shape, or form." and (3) that the child pornography statutes are unusually punitive. *See* Br. of Appellant at 9-13.

Regarding his assertion that the sentence imposed deprives him of any meaningful opportunity to obtain release, Dowell relies on *Graham v. Florida*, 560 U.S. 48, 74 (2010) to argue that a "lengthy, parole ineligible sentence runs afoul of the principle that life sentences should not be imposed lightly, unreviewably, or for other than life-punishable offenses." *See* Br. of Appellant at 8. First, Dowell's reliance on *Graham* is entirely inapposite, as that case addressed the narrow question of the constitutionality of a life sentence imposed on a juvenile offender for a non-homicide crime. Moreover, in this case, the sentencing judge carefully considered the relevant sentencing factors, including the nature and circumstances of the offense conduct, before explicitly reaching the conclusion that "a life

sentence in this case is required to do justice." J.A. 311-15. As such, Dowell's complaint that his sentence violates the Eighth Amendment because it denies him a meaningful opportunity to be released is without merit.

Dowell's suggestion that the fact that his victim "was never placed in any danger . . . and was not physically injured …" Br. of Appellant at 10, somehow lessens the gravity of his offense is absurd. Dowell groomed, molested, and abused Minor A, who was just three-years-old, pursuing sexual pleasure for himself, and memorializing this abuse, which is now available for viewing by other like-minded individuals). Dowell also personally exploited another young child. Beyond these horrible acts, Dowell collected many vile images and videos of other child victims being raped and abused, including images similar in nature to the abuse he perpetrated on Minors A and B. Dowell was convicted of using two very young children to gratify his own perverse sexual interests and produce child pornography. He was also convicted of transporting these images, which were part of his collection of over 78,000 other non-self produced child pornography images and videos and erotica. He is a sexual predator and his sentence of 960 months, though effectively a life sentence, appropriately reflects the seriousness of the egregious acts he committed against the children he exploited, and the abuse against other children he perpetrated by possessing their images. The severity of

32

Dowell's crimes case cannot be overstated and these crimes have indeed injured his victims in multiple ways. This is clearly not "one of the most passive felonies a person could commit." *Solem*, 463 U.S. at 296 (citation and internal quotations omitted).

For all these reasons, Dowell's sentence of 960 months does not raise an inference of gross disproportionality, nor do the individual sentences he received on each count raise any inference of disproportionality, when viewed against the backdrop of his conduct. Moreover, various circuit courts have considered Eighth Amendment challenges to child pornography sentences, and have repeatedly upheld sentences within the statutory minimum and maximum ranges. *See, e.g., United States v. Falgout,* 325 Fed.Appx. 775 (11th Cir. 2009)(unpublished) (sentence of 11,520 months not in violation of the Eighth Amendment); *United States v. Paton*, 535 F.3d 829, 837-38 (8th Cir. 2008)(concluding that life sentence for five counts of production of child pornography was not cruel and unusual punishment in violation of the Eighth Amendment); *Polk*, 546 F.3d at 74-78 (upholding 15-year sentence for attempted production of child pornography); *United States v. Puglisi*, 458 Fed.Appx. 31, 35 (2d Cir. 2012) (unpublished)(upholding 15-year sentences for production and attempted production of child pornography); *United States v.MacEwan*, 445 F.3d 237, 250

33

(3d Cir. 2006)(upholding 15-year mandatory minimum sentence for production of child pornography); *United States v. Davis*, 306 Fed.Appx. 102, 104 (5th Cir. 2009)(unpublished)(upholding 200-month sentence for attempted production of child pornography); *United States v. Herrick*, 512 Fed.Appx. 534, 538 (6th Cir. 2013)(unpublished)(upholding 1,140-month sentence for production, distribution, and possession of child pornography); *United States v. Gross*, 437 F.3d 691, 694-95 (7th Cir. 2006)(15-year mandatory minimum sentence for recidivist distributing child pornography); *United States v. Weis*, 487 F.3d 1148, 1154 (8th Cir. 2007) (upholding sentence of less than the twenty-year maximum under 18 U.S.C. § 2252(a)(2)); *United States v. Soule*, 250 Fed.Appx. 834, 837-38 (10th Cir. 2007) (unpublished)(upholding mandatory minimum 120-month sentence for repeat offender convicted of possession of child pornography); *United States v. Merchant*, 506 Fed.Appx. 959, 960-61 (11th Cir. 2013)(unpublished)(upholding 17.5-year sentence for distribution of child pornography); *United States v. Blage,* 426 Fed.Appx. 829 (11th Cir. 2011)(unpublished)(upholding 720-month sentence imposed for conviction on two counts of production of child pornography); *United States v. Higgins*, 504 Fed.Appx. 786 (11th Cir. 2009) (unpublished)(upholding 15-year mandatory minimum production sentence); *United States v. Green*, 259 Fed.Appx. 171, 177 (11th Cir. 2007)(unpublished) (upholding 97-month sentence

for receipt and possession of child pornography); *United States v. Johnson,* 451 F.3d 1239 (11th Cir. 2006) (holding that a 140-year sentence for producing and distributing child pornography was not cruel and unusual because the sentence was within the statutory limits and thus, not disproportionate to the offense)**.**

Dowell points to a chart of federal statutes in support of his argument that the child pornography statutes are unusually punitive. *See* Br. of Appellant at 11-12. Dowell emphasizes that many of the federal crimes in the chart carry no minimum mandatory penalty. *Id*. at 11. As stated earlier in this brief, however, Dowell's sentence was derived from stacking the maximum statutory penalties of two counts of conviction with the minimum mandatory penalties of two other counts (the remaining nine counts running concurrently). Without enumerating the various offenses, the chart makes clear that some of the offenses in the chart carry statutory penalties up to life and others carry the potential for other significant penalties (the chart omits enhanced sentences), and though it may be difficult to fully understand why certain crimes, such as child genital mutilation, carry the penalties they do,[4] the Constitution "does not require legislatures to balance crimes

---

[4]Child genital mutilation under 18 U.S.C. § 116 carries only a maximum penalty of five years, but the legislative history suggests this may have been guided by the fact that such practices are related to certain cultural practices and religious beliefs. Section 645(a) of Div. C of Pub.L. 104-208 provides that:"The Congress finds that—"(1) the practice of female genital mutilation is carried out by members of certain cultural and religious groups within the United States . . .."

35

and punishments according to any single standard, or to achieve perfect equipoise." *Polk*, 546 F.3d at 76. Further, Dowell ignores the fact that a defendant convicted of multiple counts of conviction under many of the listed offenses, could, like he did, face a punishment reached by stacking the maximum penalties for each count to reach a cumulative total punishment. For example, Dowell argues that "war crimes carry available sentences less than production of child pornography," Br. of Appellant at 12, but under 18 U.S.C. § 2441, that crime is punishable up to life, (or death if death resulted to the victim) and a defendant convicted of multiple acts would face the possibility of multiple life sentences.

Dowell also compares his sentence to "the national average sentence for child pornography crimes" of 132 months as well as to sentences for other types of crimes, such as kidnapping and hostage taking. *See* Br. of Appellant at 13-14. This reference is simply inapposite, as the national average he cites includes sentences for possession, receipt, and distribution convictions, which can, and generally do, result in significantly lower sentences than production convictions. Regarding Dowell's comparison to sentences for other types of crimes, as discussed above, Congress is not obligated to balance punishments to any single standard. *Polk*, 546 F.3d at 76. Finally, as also detailed above, numerous circuit

36

courts have considered and rejected Eighth Amendment challenges to similar child pornography sentences.

The Eighth Amendment provides a narrow proportionality guarantee which forbids only "rare" sentences that are "grossly disproportionate" to the crime. *Ewing*, 538 U.S. at 30(quoting *Harmelin,* 501 U.S. at 1005). A comparison of Dowell's calculated, predatory, abusive, and perverse conduct to a sentence of 960 months does not create an inference of gross disproportionality. *See Herrick*, 512 Fed.Appx. at 538-39; *Falgout*, 325 Fed. Appx. at 779. For all the above reasons, Dowell's sentence should be affirmed.

## II.    THE DISTRICT COURT IMPOSED A REASONABLE SENTENCE WHEN IT SENTENCED DOWELL TO A WITHIN-GUIDELINE RANGE SENTENCE OF 960 MONTHS.

A.    Standard of Review.

This Court reviews sentences for reasonableness under a deferential abuse-of-discretion standard. *Gall v. United States,* 552 U.S. 38, 51 (2007); *United States v. Crawford*, 734 F.3d 339, 341-42 (4th Cir. 2013). A reasonableness review includes both procedural and substantive components. *Id.* A sentence is procedurally reasonable where the district court committed no significant procedural errors, such as improperly calculating the Guidelines range, failing to consider the 18 U.S.C. § 3553(a) factors, or insufficiently explaining the selected

sentence. *United States v. Boulware,* 604 F.3d 832, 837–38 (4th Cir. 2010). The

substantive reasonableness of a sentence is assessed in light of the totality of the

circumstances. *Gall,* 552 U.S. at 51. While a sentence may be substantively

unreasonable if the § 3553(a) factors do not support the sentence, "[r]eviewing

courts must be mindful that, regardless of 'the individual case,' the 'deferential

abuse-of-discretion standard of review ... applies to all sentencing decisions.' "

*United States v. Diosdado–Star,* 630 F.3d 359, 366 (4th Cir.), *cert. denied,* ___

U.S. ___, 131 S. Ct. 2946 (2011)(citing *Gall,* 552 U.S. at 52). Moreover, a

sentence that falls within a properly calculated Guidelines range is presumptively

reasonable. *United States v. Allen,* 491 F.3d 178, 193 (4th Cir. 2007).

B.    <u>Argument</u>

In his second argument, Dowell complains that his sentence "failed to

comply with the objectives of the Federal Sentencing Statute."  Br. of Appellant at

15.  His primary basis for this claim appears to be Dowell's lack of prior criminal

history and the fact that Dowell did not commit a homicide offense. *See id.* at 15-

17.  As set forth below, this claim is unsupportable.

In reviewing a criminal sentence to determine if it is reasonable, this Court

must first ensure that the district court committed no significant procedural error.

*Gall,* 552 U.S. at  46, 51.  A district court commits a procedural error if it fails to

properly calculate the Guidelines, treats the Guidelines as mandatory, fails to

consider the statutory factors under 18 U.S.C. § 3553(a), bases a sentence on facts

that are clearly erroneous, or fails to adequately explain the sentence imposed. *Id*.

at 51; *United States v. Layton*, 564 F.3d 330, 336 (4th Cir. 2009). If no procedural

error exists, the Court reviews "the substantive reasonableness of the sentence

imposed" for abuse of discretion. *Gall,* 552 U.S. at 51. The Court further evaluates

the substantive reasonableness of a sentence "in light of all the relevant facts,"

*Layton,* 564 F.3d at 337 (quoting *United States v. Curry,* 523 F.3d 436, 439 (4th

Cir. 2008)) (internal quotation marks omitted), and taking into account the totality

of the circumstances. *United States v. Pauley,* 511 F.3d 468, 473 (4th Cir. 2007).

A sentence imposed within the properly calculated Guidelines range is

presumptively reasonable. *Rita v. United States*, 551 U.S. 338, 327 (2007); *United*

*States v. Abu Ali*, 528 F.3d 210, 261 (4th Cir. 2008).

In the present case, Dowell faced a combined maximum statutory penalty of

4,560 months, or 380 years. *See* J.A. 352. Dowell also faced an advisory

guideline range of life, corresponding to a Criminal History Category of I, and a

total offense level of 43.[5] United States Sentencing Guidelines, *Sentencing Table*;

J.A. 352. Dowell's advisory guideline range was therefore properly calculated at

---

[5] Although Dowell's offense level scored well above 43, Level 43 is the maximum
level allowed. *See* U.S.S.G. Ch. 5, Pt. A, cmt. n.2.

life, reduced by the Probation Officer to 4,560 months, the total of the combined

statutory maximum penalties for the counts of conviction,[6] J.A. 352, which was

then reduced by the district court to 960 months as set forth above.  Dowell did not

object to the court's ultimate conclusions regarding the applicable guideline range

(i.e., life), but did object to certain enhancements.  J.A. 360-61.

        As set forth above, the district court imposed a custodial term of 960 months

by imposing the sentences for some counts consecutively, as permitted by

U.S.S.G. § 5G1.2(b) and (d).  J.A. 193-94; *United States v. White*, 238 F.3d 537

(4th  Cir. 2001).  Dowell fails to provide any basis for concluding his sentence is

not reasonable.  Moreover, because Dowell's 80-year sentence does not exceed his

advisory guideline range, the sentence is entitled to a presumption of

reasonableness on appeal.  *Abu Ali*, 528 F.3d at 261; *United States v. Bynum,* 604

F.3d 161, 168–69 (4th Cir. 2010).  Further, "[e]ven if [this Court] would have

reached a different sentencing result on [its] own, this fact alone is 'insufficient to

justify reversal of the district court.'"  *Pauley,* 511 F.3d at 474 (quoting *Gall,* 552

U.S. at 51).  "[A] defendant can only rebut the presumption [of reasonableness] by

demonstrating that the sentence is unreasonable when measured against the §

3553(a) factors."  *United States v. Montes-Pineda,* 445 F.3d 375, 379 (4th Cir.

---

[6] The PSR also accurately set forth the statutory ranges for each charge.  JA 352.

2006) (internal quotation marks and citation omitted), *cert. denied,* 551 U.S. 1163 (2007).

There is no basis for concluding that the district court did not perform its duty to consider the requisite factors.  Indeed, the record shows the district court accorded full opportunity to both Dowell and the United States to address the factors material to the sentence, and the parties availed themselves of that opportunity.  The sentencing transcript is over 250 pages long and includes testimony in support of arguments for each party, Dowell's own testimony and allocution, and statements made on behalf of multiple victims.  The district court encouraged defense counsel to address Dowell's objections to the PSR point by point and defense counsel did just that.  Only after the district court heard extensive evidence and argument (and considered filings made in support of sentencing) did the district court make thoughtful and detailed findings about the guidelines calculations and the appropriate sentence.  Given the wealth of information provided to the district court, the zealous representation by Dowell's counsel, and the careful analysis and consideration by the district court, Dowell has failed to rebut the presumption or show that the district court abused its discretion in choosing a within-guidelines sentence.

To the extent that Dowell contests the district court's decision to deny his request for a lower sentence, this is insufficient to overcome the presumption of reasonableness.  *See United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007).  The district court in the present case did not select the sentence arbitrarily, base the sentence on impermissible factors, fail to consider pertinent section 3553(a) factors, or give an unreasonable amount of weight to any pertinent factor. As the Sixth Circuit has observed, in these circumstances, "[t]he mere fact that [a defendant] desired a more lenient sentence, without more, is insufficient to justify our disturbing the reasoned judgment of the district court."  *Trejo-Martinez*, 481 F.3d  at 413.  This is because it is not the province of the appellate court to substitute its judgment for that of the sentencing court.  *See Gall*, 552 U.S. at 51 (the fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court).

Dowell suggests that "[i]t would be difficult to imagine a situation in which a sentence of 80 years … for a first offender is 'not greater than necessary'"  Br. of Appellant at 16.  He further contends that such a sentence is not reasonable in a non-homicide case.  *Id.* at 17.  Dowell thus challenges the substantive reasonableness of his within-Guidelines sentence.

42

But the district court, after fully considering the nature of the offense and crediting Dr. Moore's conclusions about Dowell – and after considering the other requisite factors - imposed a sentence that was appropriate in order to deter Dowell from further crimes and in light of Dowell's overall conduct, which included deviant sexual behavior against two very young children, the district court was well within its discretion in concluding that no variance from the Guidelines was justified.  Although he had no prior criminal convictions, Dowell harmed numerous children, by both producing his own child pornography and in amassing a substantial collection of other child abuse images, and he poses a future danger to them.   The threat of recidivism by a pedophile who has sexually abused a child is "appalling." *United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008).  ("As Congress has found … child sex offenders have appalling rates of recidivism and their crimes are under-reported."); *see also United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders."). The Supreme Court has also noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class," and has found that "[t]he risk of recidivism posed by sex offenders is frightening and high." *Smith v. Doe*, 538 U.S. 84, 103 (2003) (quotation marks omitted).

43

The fact that this is not a homicide case does not mean that this is a case undeserving of a life sentence. As described by the district court, Dowell's acts were predatory, calculated, cold, and heinous. J.A. 311. These crimes have grievous, enduring effects. Acknowledging that the films that Dowell produced for sexual pleasure had ended up in various places, the district court found the conduct to be "extremely serious." J.A. 312. As stated by the father of the young contact victims, "[a]part from losing a child, I cannot think of anything more unbearable to go through." J.A. 245.

The district court thoughtfully considered the seriousness of the overall offense conduct and the history and characteristics of Dowell, noting Dowell's lengthy and continued child pornography connection, acts of molestation, and Dr. Moore's conclusion that Dowell's "interest in pedophilia is not going to diminish with age," J.A. 312-13, and was persuaded that Dowell should remain incarcerated for the rest of his life. In reaching this conclusion, the district court addressed the need for just punishment, deterrence, and protection of the public, and rightfully concluded that this case demanded a life sentence that was not only sufficient but also necessary and did not result in unwarranted disparities. *Id.* The district court imposed a reasonable sentence by selecting a term that addressed both the seriousness of Dowell's offenses and future dangerousness. This term

44

simultaneously reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. *See* 18 U.S.C. § 3553(a). The district court was very mindful of these sentencing goals in selecting the sentence in this case, and Dowell has not overcome the presumption of reasonableness that attaches to his within-Guidelines sentence.

In connection with the issue of general deterrence, Dowell cites and discusses supposed research that "shows" that "increases in the certainty of punishment, as opposed to the severity of punishment, are more likely to produce deterrent benefits." *Id.* at 17-18 (citation and internal quotations omitted). Whether or not there is any merit to this study, the district court rightfully found that the "life" term imposed was necessary to adequately deter others "who would dare to touch a child in this manner and make a video of it to be displayed to others." J.A. 312-13. Moreover, as explained by the district court, the sentence was necessary to protect the public from Dowell. J.A. 313.

In any event, the United States' and district court's position rests on a foundation established by Congress, the Supreme Court, and the Sentencing Commission, as well as a growing body of caselaw, concluding that general deterrence is a very important factor when considering an appropriate sentence, even in non-production cases. *See, e.g.*, *United States v. Irey*, 612 F.3d 1160, 1211

45

(11th Cir. 2010)(*en banc*) (citing *New York v. Ferber*, 458 U.S. 747, 760 (1982))

("The most expeditious if not the only practical method of law enforcement may be

to dry up the market for [child pornography] by imposing severe criminal penalties

on persons selling, advertising, or otherwise promoting the product");[7] *United*

*States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("Deterring the production of child

pornography and protecting the children who are victimized by it are factors that

should have been given significant weight at sentencing."). In *United States v.*

*Goldberg*, the Seventh Circuit opined that:

> Young children were raped in order to enable the production of the
> pornography that the defendant both downloaded and uploaded – both
> consumed himself and disseminated to others. The greater the
> customer demand for child pornography, the more that will be
> produced. Sentences influence behavior, or so at least Congress
> thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory
> sentencing factor. The logic of deterrence suggests that the lighter the
> punishment for downloading and uploading child pornography, the
> greater the customer demand for it and so more will be produced.

491 F.3d 668, 672 (7th Cir. 2007)(internal citations omitted).

Significantly, the Sixth Circuit in part reversed a district court when the

court failed to see any importance in general deterrence. *See United States v.*

---

[7] The *Irey* court noted that "[c]hild sex crimes are among the most egregious
and despicable of societal and criminal offenses." 612 F.3d at 1206.

*Bistline*, 665 F.3d 758,767 (6th Cir. 2012).[8]   The district court had stated,

"[g]eneral deterrence ... will have little [if] anything to do with this particular case."

Id.   The Sixth Circuit found the district court's statement "inexplicable and in any

event conflicts with our statement that '[g]eneral deterrence is crucial in the child

pornography context[.]"   *Id.   (citing United States v. Camiscione*, 591 F.3d 823,

834 (6th Cir. 2010)).   For all these reasons, the district court's conclusions in this

case were well-founded, and Dowell's sentence should be affirmed.

Moreover, the Guidelines understandably result in lengthy advisory

sentences for defendants like Dowell, because their crimes have directly harmed

children, and in conjunction with the prescribed goals of sentencing, lengthy

sentences simultaneously punish, deter and protect.   The district court was

unequivocal in its remarks that this case demanded a life sentence, and as set forth

herein, the district court clearly considered facts supporting the § 3553(a) factors

before determining that a sentence of 960 months was appropriate.

Further, in sentencing Dowell to a sentence of imprisonment of 960 months,

the district court did not create any unwarranted disparity.   In fact, courts have, in

many instances, imposed lengthy, or effectively life sentences for production of

---

[8] While *Bistline* reversed an extremely short sentence, the opinion is a
strongly worded opinion about the Guidelines and the seriousness of child
pornography offenses.  *Bistline*, 665 F.3d at 767.

child pornography.  For example, in *Sarras*, 575 F.3d at 1220-21, the Eleventh

Circuit affirmed as reasonable a 100-year (1,200 months) sentence for a first-time

offender who sexually abused a 13-year-old girl and produced pornographic

images of the victim.  *Id.*  The *Sarras* court noted several other child exploitation

cases in which courts upheld lengthy sentences as substantively reasonable.  *Id.*

*See United States v. Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006) (upholding as

reasonable a 140-year sentence for abusing and photographing three boys between

the ages of 8 and 16 based on consecutive statutory maximums under 18 U.S.C. §

2251(e) and § 2252A(b)(1)); *United States v. Williams*, No. 13-13353 2013 WL

6851125, *2 (11th  Cir.  Dec. 31, 2013)(unpublished)(fact that 100-year sentence

was less than 110-year statutory maximum is indicative of its reasonableness);

*United States v. Kapordelis,* 569 F.3d 1291, 1318-19 (11th Cir. 2009) (upholding

as reasonable a 420-month sentence, which represented an upward variance from

the 262-327-month advisory guidelines range and included 240-month sentences

on counts charging production of child pornography under § 2251(a) and

180-month consecutive sentences on counts charging receipt of child pornography

under § 2252A(a)(2)(A)); *United States v. Huffstatler*, 561 F.3d 694, 698 (7th Cir.

2009) (upholding as reasonable an above-guidelines, 450-month sentence for

producing pornographic pictures of a 14-year-old boy); *United States v. Raplinger*,

555 F.3d 687, 695 (8th Cir. 2009) (upholding as reasonable a 457-month sentence

for photographing and having sexual intercourse with a 15-year-old girl), *cert.*

*denied*, 129 S. Ct. 2814 (2009);  *United States v. Betcher*, 534 F.3d 820,

827-28(8th Cir. 2008) (upholding as reasonable a 750-year sentence for a first-time

offender who had taken pornographic pictures of five 8- to 11-year-old girls,

including two of his granddaughters), *cert. denied*, 555 U.S. 1123 (2009); *United*

*States v. Vowell*, 516 F.3d 503, 511-13 (6th Cir. 2008) (upholding as reasonable a

780-month sentence for a 40-year-old man who had sexual intercourse with his

girlfriend's 8-year-old daughter while being videotaped by his girlfriend); *see also*

*Paton*, 535 F.3d at 837-38 (8th Cir. 2008) (concluding that life sentence for five

counts of production of child pornography was not cruel and unusual punishment

in violation of the Eighth Amendment); *United States v. Pugh*, 515 F.3d at 1202

("[W]e have typically treated child sex offenses as serious crimes, upholding

severe sentences in these cases").[9]

    This Court recently affirmed a 1,440-month sentence by aggregating the

maximum sentences for four production counts.  *United States v. Hallman*, No. 13-

4086 2013 WL 6511516 (4th Cir. Dec.13, 2013)(unpublished).  The Court has also

affirmed, *inter alia*, the following cases that involved, at least in part, production of

child  pornography  convictions:      *Schellenberger, supra*  (affirming  100  year

---

[9] Other examples are set forth in the first argument in this brief.

sentence that was 10 years shy of the aggregated statutory maximum sentences; extra 10-year sentence run concurrent in consideration of his cooperation); *United States v. Engle*, 676 F.3d 405 (4th Cir. 2012)(affirming 480-month sentence which was the result of an upward variance); *United States v. Mattocks*, 408 Fed.Appx. 717 (4th Cir. 2011) (unpublished) (affirming 600-month sentence for one count of production of child pornography involving a 6-year old child and one count of transportation of child pornography); *United States v. Ebersbach*, 489 Fed.Appx. 635 (4th Cir. 2011) (unpublished) (affirming 360-month Guidelines sentence); *United States v. Martinez,* 453 Fed.Appx. 342 (4th Cir. 2011) (unpublished) (affirming of denial of motion to withdraw guilty plea in case where defendant received 960-month sentence), *cert. denied*, 132 S. Ct. 1130 (2012).[10]

Likewise, in *Irey*, the defendant, who engaged in repeated unthinkable conduct, was charged in a single count, and ultimately received a sentence of thirty years, the maximum for that charge. 612 F.3d at 1222. The Eleventh Circuit,

---

[10] The WDVA imposed 23-year and 25-year sentences respectively in *United States v. Bruffy*, Criminal No. 6:11CR00006, 2012 WL 1003503 (W.D.Va. Mar. 26, 2012) and *United States v. Miller,* 534 Fed.Appx. 204 (4th Cir. 2013)(unpublished). The *Bruffy* victims were unaware that their images (primarily depictions of lascivious exhibition of the genitals) were taken since they were asleep. Miller, who was older and had health problems had filmed an approximately 14 or 15 year old girl performing oral sex on himself. In a more recent case, *United States v. Cobler*, presently on appeal before this Court, Appeal No. 13-4170 the defendant was sentenced to 120 years.

sitting *en banc*, made clear its strong disagreement with the district court's original variance sentence, finding that "no downward variance ... is reasonable in this case." *Id*.   Indeed, a reading of the opinion as a whole leaves the impression that the Eleventh Circuit may well have thought a higher sentence than that allowed by the statutory maximum in that case would have been warranted.   Irey was apparently fifty years old at the time of his sentencing and the opinion makes clear that his advanced age at the time of release did not justify a shorter sentence.   *Id.* at 1205-06.

In an effort to convince the Court that Dowell's sentence was somehow "heavily influenced by charging decisions by the government that appear atypical" and was out of line with other "similar" and "more egregious" cases, Dowell points to the 30-year sentence in *Irey* and the 78-month sentence in *United States v. Crandon*, 173 F.3d 122 (3d Cir. 1999).   His reliance on these cases is misplaced. The fact that the Government in the *Irey* case might have been able to charge the defendant in that case with multiple charges is not properly the subject of this Court's consideration in determining whether a sentencing disparity exists in this case.   Irey's conduct was unquestionably horrific in scope and magnitude, and merited the maximum possible penalty.   *Irey* at 1224-25.   In Dowell's case, with multiple counts of conviction against very young victims, the district court

justifiably found that Dowell should receive the maximum sentence too. The fact that Irey ultimately received only thirty years does not create a disparity which should in any way detract from the reasonable sentence imposed on Dowell for his crimes.

The offenses in *Crandon* occurred in 1996. At that time, production of child pornography carried no mandatory minimum sentence and was rather punishable by up to 10 years of imprisonment. Likewise, receipt of child pornography, the offense for which Crandon was convicted, carried the same statutory penalty. The Guidelines were also significantly lower for these offenses in 1996 and the sentence imposed in that case may well have been within the Guidelines range. However, while that case also involved the repeated exploitation of a minor, the facts in *Crandon* are distinguishable. Among other things, the 14-year-old victim in that case was significantly older than the especially young children in the present case.

As characterized by the district court, Dowell's predatory offenses are "heinous," J.A. 312, and support a "life" sentence. While Dowell had no prior *convictions*, he had spent years committing crimes against children and had an undeniable longstanding sexual interest in young children.

The goals set forth under 18 U.S.C. § 3553(a)(2)(A) embody the "just desserts" concept and "carries … the need not just to punish but to punish justly." *Irey*, 612 F.3d at 1206. A longer sentence is warranted the more serious the conduct. *See id*. The less it takes to have the statutory minimum imposed, the higher the sentence should be for much worse conduct. *Id*. at 1209. A single image depicting the lascivious exhibition of a 17-year old minor would require a 15-year sentence. The present case involves much more serious conduct and rightfully resulted in a much higher sentence - one that was sufficient to meet the goals of sentencing. Dowell's within-Guidelines sentence reflects the seriousness of his offenses, promotes respect for the law, deters future conduct, reflects the seriousness of the offense and provides the public with protection from future crimes, and likewise affords justice to the child victim. The sentence imposed was therefore sufficient but not greater than necessary to meet those goals, and accurately reflected all the sentencing factors and should be affirmed.

## III.   THE DISTRICT COURT DID NOT ERR IN APPLYING BOTH FIVE-LEVEL ENHANCEMENTS PURSUANT TO U.S.S.G. §§2G2.2(b)(5 ) AND 4B1.5(b)(1), WHERE THE PROVISIONS HAVE DIFFERENT PURPOSES AND WHERE, IN ANY EVENT, ANY ERROR WOULD BE HARMLESS BECAUSE THERE WOULD HAVE BEEN NO EFFECT ON THE ULTIMATE SENTENCE.

A. <u>Standard of Review</u>

This Court accords due deference to a district court's application of the sentencing guidelines. *United States v. Steffen*, No. 12-4484, 2013 WL 6698604, *2 (4th Cir. Dec. 20, 2013) (citation omitted) (unpublished). If the issue turns primarily on a factual determination, this Court applies the 'clearly erroneous' standard; if the issue turns primarily on the legal interpretation of a guideline term, the standard moves closer to *de novo* review. *Id.* (citations and quotations omitted).

B. <u>Argument</u>

In his next argument, Dowell claims that the district court erred in applying both a five-level enhancement for engaging in a pattern of activity of sexual abuse or exploitation of a minor pursuant to U.S.S.G. §2G2.2(b)(5) and a five-point enhancement for engaging in a pattern of activity involving prohibited sexual conduct under U.S.S.G. §4B1.5(b)(1); more specifically, he contends that the application of both constitutes impermissible double counting. Br. of Appellant at 20. Significantly, he neither denies that Dowell's conduct qualifies for each of these enhancements nor cites a single case in support of his argument.

As set forth below, besides the fact that any error would be harmless, his argument misses the mark because the Sentencing Guidelines themselves

54

contemplate the application of both provisions in the same case.[11]  Indeed, in an

unpublished opinion, the Fourth Circuit has already squarely rejected Dowell's

precise argument in *Schellenberger*, 246 Fed.Appx. at 832.

    Section 4B1.5(b) of the Guidelines provides, in relevant part, that "[i]n any

case in which the defendant's instant offense of conviction is a covered sex crime

... and the defendant engaged in a pattern of activity involving prohibited sexual

conduct:  (1) The offense level shall be 5 plus the offense level determined under

Chapters Two and Three."  U.S.S.G. §4B1.5(b)(1).  "Pattern of activity" is defined

as two or more separate incidents.  *See id.*, cmt. n.4(B).  A "covered sex crime" for

purposes of this enhancement includes an offense perpetrated against a minor

under Chapter 110, such as Dowell's production offenses.  *Id.*, cmt. n.2.

"Prohibited sexual conduct" includes "any offense described in 18 U.S.C.

§2426(b)(1)(A) or (B)" or the production of child pornography.  *Id.*, cmt. n.4.

Thus, the defendant's conduct in the present case clearly qualifies for this

enhancement for Counts One through Twelve.  This same conduct also triggers the

enhancement in U.S.S.G. §2G2.2(b)(5).

    In *Schellenberger,* this Court found that a district court had correctly

determined that double-counting in this situation was permitted because it was not

---

[11]  Moreover, as the district court noted, double counting is generally authorized
unless the Sentencing Guidelines expressly prohibit it.  J.A. 175 (citing *United
States v. Crawford,* 18 F.3d 1173, 1179 (4th Cir. 1994).

expressly prohibited by the Sentencing Guidelines. *See* 246 Fed.Appx. at 832.

The Court went on to note that the language in §4B1.5(b)(1) indicates that its

five-level enhancement "is to be added to the offense levels determined under

Chapters Two and Three" and therefore, "the guidelines intend the cumulative

application of these enhancements." *Id; see also United States v. Bastian*, 650 F.

Supp. 2d 849, 869-70 (N.D. Iowa 2009) (acknowledging that the two provisions

involve the same pattern of activity but explaining that the Sentencing Commission

intended cumulative application of §§2G2.2(b)(5) and 4B1.5(b)(1), and that the

sections concern "conceptually separate notions" in that "[t]he §2G2.2(b)(5)

enhancement is a specific offense characteristic for crimes involving child

pornography" while "§4B1.5 was created to address recidivism concerns")(citing

§4B1.5 cmt.) *aff'd, Bastian* 603 F.3d 460 (8th Cir. 2010); *United States v. Wilson*,

No. 1:07CR-219, 1:07-CR-297, 2007 WL 3070361, *2 (E.D.Va. Oct. 19, 2007)

(unpublished)  ("even where a five level enhancement applies to one particular

count under Section 2G2.2(b)(5), an additional five level enhancement may apply

to the combined offense level under Section 4B1.5(b)(1)"); *United States v. Fred*,

No. CR-050801, JB., 2008 WL 2229527, *9 (D.N.M. Feb. 8, 2008)

(unpublished)(citing *Schellenberger* and also stating the court's belief "that there is

some cumulative nature to what the Guidelines do, and that Congress intends the Guidelines to be cumulative for sex crimes against minor victims").

Likewise, in *United States v. Carter*, 292 Fed.Appx. 16, 20 (11th Cir. 2008) (unpublished) the Eleventh Circuit rejected a defendant's argument that application of both sections constituted impermissible double counting. First, as in *Schellenberger,* the court noted that "the Sentencing Commission intended for Guidelines sections to apply cumulatively." *Id*. Second, like this Court, the court relied on the specific language of the guidelines to hold that the two sections were not mutually exclusive, as §4B1.5(b)(1) explicitly states that the enhancement "shall be 5 plus the offense level determined under Chapters Two and Three." *Id*. (quoting U.S.S.G. §4B1.5(b)(1)). The Eleventh Circuit found this language to be indicative of the Sentencing Commission's intent that the pattern of abuse enhancement in the offense guideline be *"added"* to the Chapter 4 enhancement. *Id*. (emphasis in original). The court reasoned that the two sections address different harms, and therefore no double counting occurs. *Id*. While §2G2.2(b)(5) "addresses the fact that the offense itself involved a pattern of sexually exploiting minors," §4B1.5(b)(1) "looks at the likelihood that the defendant will become a repeat offender and whether lengthy incarceration is therefore needed to protect the public." *Id*.

57

In any event, even assuming *arguendo* that the application of both enhancements was improper, any resulting error is harmless because 1) as found by the district court, the double counting only affected Count Thirteen, J.A. 155-56; and 2) the district court made it wholly clear that "[j]ustice requires a life sentence." J.A. 315.

The district court found that Counts Four, Eight, Nine, and Thirteen each had the highest total offense level of 42. J.A. 180-81. Counts One, Five, Six, Seven, and Ten each had a total of 40. *Id.* Counts Eleven and Twelve had the lowest calculation, at 38. J.A. 181. Given the number of counts and the fact that Count Thirteen, the only charge to be calculated under U.S.S.G. §2G2.2, did not result in the highest offense level, discarding that charge would have no effect on the total adjusted offense level. The subtotal offense level would still be 44, *see* J.A. 182, even before the addition of the enhancement under §4B1.5.

This Court has found has found harmless error where a district court has indicated that it would have imposed the same sentence in the absence of an erroneous enhancement and any resulting variance is reasonable. *See United States v. Savillon-Matute*, 636 F.3d 119, 124 (4th Cir. 2011)(citations omitted). In the present case, not only is it clear that the district court intended to impose a life sentence regardless of the enhancement, there would have been no variance even in

the absence of the enhancement because Dowell would still have faced an advisory

life range.  Consequently, Dowell's third claim must fail.

### IV.  THE DISTRICT COURT DID NOT ERR IN APPLYING THE VULNERABLE VICTIM ENHANCEMENT IN THIS CASE BECAUSE DOWELL'S YOUNGEST VICTIM WAS ESPECIALLY YOUNG AND CLEARLY SUSCEPTIBLE TO DOWELL'S GROOMING BEHAVIOR.

A. Standard of Review

This Court accords due deference to a district court's application of the

sentencing guidelines.  *United States v. Steffen*, No. 12-4484, 2013 WL 6698604,

*2 (4th Cir. Dec. 20, 2013)(citation omitted)(unpublished).  If the issue turns

primarily on a factual determination, this Court applies the 'clearly erroneous'

standard; if the issue turns primarily on the legal interpretation of a guideline term,

the standard moves closer to *de novo* review.  *Id.* (citations and quotations

omitted).

B.  Argument

In his final argument, Dowell claims that the district court erred in applying

the vulnerable victim enhancement under U.S.S.G. §3A1.1(b)(1) because,

according to Dowell, the district court applied the enhancement based on factors

already accounted for in the offense guideline.  Dowell is wrong.

59

The Guidelines allow for a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim."[12] U.S.S.G. §3A1.1(b)(1).  "No more is required than the actual vulnerability of the victim and the defendant's knowledge of that vulnerability to support application of the enhancement."  *United States v. Etoty*, 679 F.3d 292, 295 (4th Cir.)(citation and internal quotations omitted), *cert. denied,* 133 S.Ct. 327 *(*2012).  The United States bears the burden to prove, by a preponderance of the evidence, that the enhancement should be applied.  *Steffen* at *2.

Dowell is correct that the commentary proscribes the application of this enhancement "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons unrelated to age." U.S.S.G. §3A1.1(b)(1), comment. (n.2).  Thus, to apply the enhancement, a district court must "rely on factors unrelated to the calculation of [a defendant's] offense level.  *United States v. Grubbs*, 585 F.3d 793, 805-06 (4th  Cir. 2009).

The United States objected to the absence of the enhancement in the initial PSR.  The probation officer agreed with the United States and amended its report

---

[12] At minimum, Dowell "should have known" Minor A was vulnerable.

to reflect the two-level enhancement in each of Counts 1-10 and 13, regarding

Minor A.  *See* J.A. 360.

A vulnerable victim enhancement may be applied when victims of child

pornography offenses are especially young.  *See United States v. Jenkins*, 712 F.3d

209 (5th Cir. 2013).  In *Jenkins*, which upheld the application of the enhancement

in a child pornography trafficking case, the Fifth Circuit explained that, while §

3Al.1 generally does not apply when a factor such as age is already incorporated in

the offense guideline, the additional enhancement was appropriate because of the

presence of depictions of very young children in the defendant's child pornography

collection.  In support of its holding, the Fifth Circuit cited a prior Ninth Circuit

case, *United States v. Wright*, 373 F.3d 935 (9th Cir. 2004), which approved of the

enhancement because of the small physical size and characteristics of extreme

youth associated with infants and  toddlers.[13]  The *Jenkins* and *Wright*  courts

appeared to focus their attention on the fact that a very young child is

developmentally different than an older minor in significant ways and thus may be

especially vulnerable to child pornography offenses.

The district court cited with approval *Jenkins* and *Wright,* and rightfully

found that the videos in the present case conclusively demonstrated that the three-

---

[13]  The Ninth Circuit did  further  note  that  these characteristics may vary with
each child.  *See Wright*  at 943.

year-old victim was vulnerable in ways that an older child – including, even Minor

B - would not be.  *See* J.A. 168-73.  For example, Minor A could not comprehend

the nature of the defendant's conduct, other than that he "played" with her.  J.A.

172.  As the district court further found, the videos show the defendant engaging in

successful grooming-type behavior, which also demonstrated Minor A's particular

vulnerability.

In finding that the enhancement was warranted in the present case, the

district court noted characteristics of Minor A besides her very young age, such as

her "cognitive abilities" and her inability to understand what was happening to her,

and stated that this demonstrated "the particular vulnerability psychologically in

this child."  J.A. 172-73.  In other words, Minor A's age and willingness to

participate in the defendant's abusive "play" without any apparent understanding

of the nature of the conduct demonstrated just how vulnerable she was. As such,

the vulnerable victim enhancement was entirely appropriate in this case and should

be affirmed.

Notably, the *Jenkins* case was a child pornography trafficking case and did

not involve the hands-on exploitation that is extensive in the present case.  Thus,

given the especially young children depicted in Dowell's collection, the

enhancement may also have been applied based on Dowell's child pornography

62

collection.  In any event and in light of the above, the district court did not err.

Finally, for the same reasons, as set forth in Argument III, any error would have

been harmless.

## **<u>CONCLUSION</u>**

For the foregoing reasons, we respectfully request that the Court affirm the

judgment and sentence imposed by the district court.

Respectfully submitted,
TIMOTHY J. HEAPHY
United States Attorney


<u>s/Nancy S. Healey</u>
Assistant United States Attorney
(VA  Bar No. 39447 )

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief has been prepared using fourteen point, proportionally spaced, serif typeface – Microsoft Office Word 2007, Times New Roman, 14 point, and is in compliance with Fed. R. App. R. P. 32(a)(7)(B).

This brief contains 63 pages and approximately 13,943 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(ii), and is in compliance with Fed. R. App. P. 32(a)(7)(B).

I understand that a material misrepresentation can result in the Court striking the brief and imposing sanctions.

<u>s/Nancy S. Healey</u>
Assistant United States Attorney
(VA  Bar No. 39447 )

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 22, 2014, I electronically filed the foregoing Brief of Appellee with the Clerk of the Court using the CM/ECF System, which will send notice, and constitute service, of such filing to the following registered CM/ECF user(s): **R. Darren Bostic, Esquire**, Counsel for the Appellant.

<u>s/Nancy S. Healey</u>
Assistant United States Attorney
(VA  Bar No.  39447 )